## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

TROY SANBORN,                        )
                                     )
      Plaintiff,                 )
                                     )
v.                                   )     Case No. CIV-14-1342-W
                                     )
CAROLYN W. COLVIN, Acting            )
Commissioner of the Social Security  )
Administration,                      )
                                     )
      Defendant.                 )

## REPORT AND RECOMMENDATION

Plaintiff, Troy Sanborn, seeks judicial review of the Social Security Administration's denial of disability insurance benefits and supplemental security income benefits. This matter has been referred by United States District Judge Lee West for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## I.    Procedural Background

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on July 30, 2012, alleging a disability onset date of July 25, 2012. The Social Security Administration denied the applications initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 14], 14-25. The Appeals Council denied Plaintiff's request for review. AR 5-7. This appeal followed.

## II.    The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential

evaluations process); *see also* 20 C.F.R. §§ 404.1520; 416.920.  The ALJ first determined that

Plaintiff had not engaged in substantial gainful activity since the alleged onset date, July 25,

2012.  AR 16.  At step two, the ALJ determined that Plaintiff has the following severe

impairments: major depressive disorder, post-traumatic stress disorder (PTSD) and anxiety

disorder.  *Id.*  At step three, the ALJ found that Plaintiff's impairments do not meet or medically

equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 19.

    The ALJ next determined Plaintiff's residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform a full range of work
> at all exertional levels but with the following nonexertional limitations.  The
> claimant can perform simple and detailed tasks and instructions but no complex
> tasks and instructions; can have no more than occasional interaction with
> coworkers or supervisors; and can have no public contact.

AR 20.  At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant

work as a fiber optics technician, infantry soldier, food server or order puller.  AR 23.  But,

relying on the testimony of a vocational expert (VE), the ALJ concluded, at step five, that there

are jobs existing in significant numbers in the national economy that Plaintiff can perform

including the representative jobs of housekeeper, dish washer and janitor.  AR 24.  The ALJ

concluded, therefore, that Plaintiff is not disabled for purposes of the Social Security Act.  AR

25.

## III.    <u>Plaintiff's Claims</u>

    Plaintiff raises the following claims of error: (1) the ALJ's RFC assessment is not

supported by substantial evidence because it is not "expressed in proper work-related functions;"

(2) the RFC assessment fails to include "all of the required symptomology;" (3) the ALJ's

credibility analysis is based on boilerplate language and is not supported by substantial evidence;

and (4) the ALJ failed to properly review the disability determination of the Veteran's Administration (VA).

## IV.    Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V.    Analysis

### A.    The ALJ's RFC Properly Reflects the Degree of Limitations for Plaintiff's Mental Impairments

Plaintiff first claims that the ALJ's RFC determination is flawed because it does not comply with the requirements of Social Security Ruling (SSR) 96-8p which requires that mental limitations be expressed in terms of work-related functions. *Id.*, 1996 WL 374184 at * 4 (July 2, 1996). Plaintiff then cites the ALJ's findings at step three of the sequential evaluation process,

3

i.e., that Plaintiff has moderate difficulties with regard to concentration, persistence or pace and social functioning. *See* Plaintiff's Brief at p. 5 (*citing* AR 19). Plaintiff claims that the following hypothetical the ALJ gave to the VE does not reflect Plaintiff's moderate limitations in the ability to maintain concentration, persistence or pace and to maintain social functioning:

> [A]ssume the claimant has a residual functional capacity to perform all work at all exertional levels, except that he would be limited to simple and detailed, but not complex tasks and instructions. Be limited to no more than occasional interaction with coworkers and supervisors, and he would be precluded from any public contact.

AR 365.

Plaintiff supports his claim with an improper reliance on the ALJ's step-three findings and conclusions set forth in the Psychiatric Review Technique Form (PRTF). AR 19, 285. The PRTF "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184 at * 4 (July 2, 1996). The "limitations identified in the 'paragraph B' and 'paragraph C' criteria *are not an RFC assessment* but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. *Id* (emphasis added).

Plaintiff's reliance, therefore, on the ALJ's step three findings is improper. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found inthe broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF." *Id*. Thus, evaluation of mental RFC for use at step four or five is more properly considered in the context of the twenty mental

activities presented in the form entitled Mental Residual Functional Capacity Assessment (MRFCA).[1]

In formulating his RFC, the ALJ gave great weight to the mental RFC determination of state agency medical consultant, Sharon Taber, PhD. (affirmed by state agency medical consultant, Dr. Lindsay). AR 22; *see also* AR 289-92 (Dr. Taber); 294 (Dr. Lindsay). Dr. Taber's findings are set forth in the MRFCA completed on October 22, 2012. AR 289-291.

Part I of the MRFCA is entitled "Summary Conclusions." As stated on the MRFCA form itself, "[t]his section is for recording summary conclusions derived from the evidence in file." AR 289. Part I includes mental activities divided into four categories: Understanding and Memory, Sustained Concentration and Persistence, Social Interaction and Adaptation -- categories A-D, respectively. AR 289-90 The MRFCA instructs that "[e]ach mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis." AR 289.

Under category A, Understanding and Memory, Dr. Taber checked a box indicating that Plaintiff has moderate limitations in the ability to understand and remember detailed instructions. She found Plaintiff had no significant limitations in the other two subcategories identified -- the ability to remember locations and work-like procedures and the ability to understand and remember very short and simple instructions. AR 289.

Under category B, Sustained Concentration and Pace, Dr. Taber checked a box indicating Plaintiff has moderate limitations in the ability to carry out detailed instructions. As to the remaining seven subcategories identified, Dr. Taber found that Plaintiff is not significantly limited. AR 289-90.

---

[1] Plaintiff appears to concede that the MRFCA controls. He devotes his entire Reply to the MRFCA findings.

With respect to category C, Social Interaction, Dr. Taber found Plaintiff to be markedly limited in his ability to interact appropriately with the general public. AR 290. But Dr. Taber found that Plaintiff had no significant limitations in the other four subcategories listed there. Finally under category D, Adaptation, Dr. Taber opined that Plaintiff was not significantly limited in any of the four subcategories identified. *Id.*

As required, Dr. Taber also completed Part III of the MRFCA. Part III instructs that the summary conclusions identified in Part I must be explained in "narrative form." AR 291. Dr. Taber explained that Plaintiff can "perform simple and some complex tasks," "relate to others on a superficial work basis," "adapt to a work situation" but cannot "relate to the general public." AR 291. Dr. Lindsay concurred with the findings of Dr. Taber. AR 294.

The ALJ adopted these findings in the RFC. AR 20. But the ALJ further allowed for greater limitations, finding that Plaintiff is not able to perform complex tasks. AR 23 ("The Administrative Law Judge agrees [with Dr. Taber's opinion], but resolving doubt in favor of the claimant, the Administrative Law Judge additionally finds the claimant is unable to understand, remember and carry out complex instructions.").

Plaintiff claims that "there is no clear indication" in the ALJ's RFC determination that the ALJ accounted for Plaintiff's "moderate limitation in the ability to maintain social functioning or in the ability to maintain concentration, persistence and pace for extended periods." *See* Plaintiff's Brief at p. 5. According to Plaintiff there is no "logical connection" between Plaintiff's impairment and the ALJ's finding that he can perform simple tasks and relate to supervisors on a superficial basis. *Id.* at pp. 5-6. In his Reply, Plaintiff further argues that the ALJ "confused skill level with mental function." *See* Reply at p. 4. ("The Section III narrative . . . contradicts the limitations marked in Section I because it does not logically follow that a

limitation to 'simple and detailed tasks' and 'occasional interaction with coworkers or supervisors' and 'no public contact' has a proper correlation to the moderate impairments either the ALJ or agency doctors found.") (citations omitted).  Plaintiff contends that as a result, the RFC is not expressed in "proper work-related functions."

In response, the Commissioner first notes, as the Court discussed above, that the ALJ's step-three findings that Plaintiff had moderate difficulties in social functioning and in concentration, persistence and pace, "were not a mental RFC assessment."  *See* Response at p. 13.  The Commissioner then addresses the ALJ's RFC finding.  The Commissioner argues that Part III of the MRFCA is determinative because Section III "reflects the psychologists' opinion about Plaintiff's mental functioning."  *See id*.  And, the Commissioner contends that the ALJ's RFC is consistent with the opinion of Dr. Taber as reflected in Section III of the MRFCA because the RFC limits Plaintiff to "no more than occasional interaction with co-workers and supervisors, and no public contact" and provides even more restrictive limitations with respect to the degree of the complexity of work Plaintiff can perform.  *See id*.  The Commissioner fails to directly address Plaintiff's claim that the ALJ did not express the mental impairments in terms of work-related functions.

Plaintiff heavily relies on *Jamarillo v. Colvin*, 576 F. App'x 870 (10th Cir. 2014), an unpublished decision, in support of his claim.  In *Jamarillo*, the ALJ determined that the claimant's RFC limited him to simple, routine, repetitive and unskilled tasks.  The claimant argued that the RFC did not sufficiently encompass his mental limitations and violated SSR 96-8p's requirement that mental limitations be expressed in terms of work-related mental activities.

Addressing the claimant's argument, the Tenth Circuit first observed that the basic mental demands of unskilled work include the abilities (on a sustained basis) to, inter alia,

understand, carry out, and remember simple instructions; and to respond appropriately to supervision and coworkers. *Id*. at 875 (*citing* SSR 85-15, 1985 WL 56857 at *4 (1985)). The court stated that "[t]hese abilities *are examples of work-related mental functions*." *Id* (emphasis added).

In *Jaramillo* one doctor, Dr. Mellon, opined that the claimant had moderate limitations in the ability to carry out instructions, attend and concentrate, and work without supervision.[2] The Tenth Circuit found that "[n]one of the basic mental abilities of unskilled work described in SSR-15 captures any of the three *moderate* limitations Dr. Mellon found . . . nor do the additional limitations to simple, routine and repetitive tasks." *Id*. at 876 (emphasis in original). Thus, the Court found that "[t]he limitation to simple, routine, repetitive, and unskilled tasks the ALJ included in his hypothetical to the VE did not clearly relate the moderate impairments Dr. Mellon found." *Id*.

Unlike the ALJ in *Jaramillo*, in this case, the ALJ did not merely include a limitation to "unskilled work" as "shorthand for the specific mental abilities described in SSR 85-15," *see Jaramillo*, 576 F. App'x at 875, but incorporated the specific findings set forth in Section III of the MRFCA. Those findings – that Plaintiff can only perform simple and some complex tasks,

---

[2] It does not appear these limitations were identified in the MRFCA. A different doctor, Dr. Walker, completed the MRFCA. Dr. Walker found the claimant suffered moderate limitations in the ability to "(1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) sustain an ordinary routine without special supervision; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) accept instructions and respond appropriately to criticism from supervisors"; (6) respond appropriately to changes in the work setting; and (7) set realistic goals or make plans independently of others." *Id*. at 873 (internal quotations omitted). In the narrative, Dr. Walker opined that the clamant "can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting." *Id*.

can relate to others on a superficial basis, but cannot relate to the general public -- accurately reflect, in work-related functions, Plaintiff's moderate limitation to carry out *detailed* instructions and his marked limitation in the ability to interact appropriately with the general public. *Compare Williams v. Colvin*, No. CIV-13-848-R, 2015 WL 1010489 at *3 (W.D. Okla. March 5, 2015) (Order Adopting Report and Recommendation) (affirming ALJ's RFC determination on identical facts and stating that "unlike *Jaramillo*, the consultative examiners herein did not impose moderate limits on Plaintiff's ability to carry out instructions, regardless of whether they were simple or complex, or to attend and concentrate or work without supervisor[;] [r]ather, the moderate limits were consistent with the administrative law judge's residual functional capacity, which did not provide that Plaintiff could follow complex instructions"). And, as discussed, the ALJ further limited the RFC to preclude the ability to perform complex tasks and instructions. All these limitations were incorporated in the hypothetical to the VE. AR 365. Thus, the Court finds Plaintiff's first claim of error lacks merit and should be denied.

The Court notes that in *Jaramillo*, the Tenth Circuit treated, as an independent claim, whether the state agency medical consultant's Section III narrative set forth in the MRFCA contradicted the moderate limitations he found in Section I. But the court did not reach the issue, finding the claimant had forfeited the claim by not properly raising the claim before the district court. Here, Plaintiff's Brief does not raise a claim based on alleged inconsistencies between the moderate limitations identified by Dr. Taber in Section I of the MRFCA and the narrative findings set forth in Section III.

As noted above, however, Plaintiff devotes his entire Reply to this issue in response to arguments made by the Commissioner including the Commissioner's reliance on an unpublished decision, *Carver v. Colvin*, 600 F. App'x 616 (10th Cir. 2015). Therefore, the Court further

addresses whether any inconsistency exists between the findings Dr. Taber made in Sections I and III of the MRFCA.

In *Carver*, the Tenth Circuit addressed the different purposes of Section I and Section III of the MRFCA. As the MRFCA itself states, "Section I 'is for recording summary conclusions derived from the evidence in the file' and directs that '[d]etailed explanation of the degree of limitation for each category . . . is to be recorded in Section III.'" *Id.*, 600 F. App'x at 618. But "[it] is the narrative written by the psychiatrist or psychologist in Section III . . . that adjudicators are to use as the assessment of RFC. *Id.* at 619 (*quoting* POMS DI 25020.010 B.1.) (additional citations omitted).[3] Nonetheless, an ALJ cannot "turn a blind eye to moderate Section I limitations," and, therefore, "if a consultant's Section III narrative . . . contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.*

In *Carver*, Dr. Smith, the state consultative examiner, marked only one moderate limitation in the category of sustained concentration and persistence – the claimant's ability to "carry out detailed instructions." Dr. Smith found that the claimant was not significantly limited in all other sub-categories listed there. Dr. Smith then completed the Section III narrative and found that the claimant was limited to "simple tasks" and could "adapt to a simple work situation." The court held that "Dr. Smith provided a POMS-compliant Section III narrative regarding concentration, persistence or pace because she accounted for the one moderate

---

[3] The Programs Operations Manual System (POMS) is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The court "defer[s] to the POMS provisions unless [it is] determine[d] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n. 2 (10th Cir. 2001) (*quoting McNamar*, 172 F.3d at 766).

limitation in that functional category when she limited [the claimant] to simple tasks and work situations." *Carver*, 600 Fed. App'x at 621.

Based on *Carver*, Plaintiff's claim of error lacks merit. The Section III narrative accounts for the moderate limitation in Plaintiff's ability to understand, remember and carry out detailed instructions by limiting Plaintiff to "simple and some complex tasks."[4] *Compare Zaloudek v. Colvin*, No. 13-4128-SAC, 2015 WL 1304501 at *6 (D. Kan. March 23, 2015) (unpublished op.) (rejecting challenge to RFC on grounds narrative discussion was insufficient where ALJ adopted medical consultant's opinion that claimant had moderate limitations in his ability to understand, remember and carry out detailed instructions and ALJ "correspondingly limited Plaintiff to work involving simple, routine and repetitive tasks"). Moreover, as discussed, the ALJ provided a more restrictive RFC, allowing for only simple tasks. AR 23.

In addition, the Section III narrative accounts for Plaintiff's marked limitations in the ability to interact with the general public by opining that Plaintiff cannot relate to the general public. Finally, the narrative provides that Plaintiff can relate to others on a superficial work basis. Plaintiff identifies no evidence to contradict this finding. Indeed, except as to the marked limitation to interact with the general public, Dr. Taber found Plaintiff was not significantly limited as to all other subcategories under category C, Social Interaction. AR 290. Accordingly, to the extent Plaintiff has adequately raised a claim based on alleged inconsistencies between Dr.

---

[4] In his Reply, Plaintiff continues to refer to the moderate limitations in the most broad terms – i.e., moderate limitations in "concentration, persistence and pace." *See, e.g.*, Reply at p. 4. But as discussed above, Plaintiff improperly interchanges findings at step three with the more refined findings required for mental RFC. The MRFCA reflects that Plaintiff has moderate limitations only in one of the eight subcategories identified under category B, Sustained Concentration and Persistence and specifically, the ability to carry out detailed instructions. That moderate limitation is accurately addressed by the ALJ's RFC and corresponding hypothetical to the VE.

Taber's Section I and Section III findings, Plaintiff's claim is without merit and should be denied.

## B.    Additional Challenge to the RFC

Plaintiff next contends that the ALJ's RFC "does not include all of the required symptomology of Mr. Sanborn." *See* Brief at p. 6. Specifically, Plaintiff references his nightmares, the fact that his anxiety prevents him from driving, his suspicion of people and fear of strangers, his inability to leave the house, the ineffectiveness of his medications, and worsening headaches after he was attacked him in 2012. *See id.*[5] Plaintiff claims the RFC does not account for any of the referenced "symptomology." *Id.* at pp. 6-7.

Plaintiff's described symptomology arises from Plaintiff's subjective complaints. The issue as to whether limitations related to the described symptomology should have been included in the RFC is more appropriately addressed in the context of the ALJ's credibility analysis. *See* SSR 96–7p, 1996 WL 347186, at *1 (July 2, 1996) (the assessment of a claimant's RFC generally requires the ALJ to make findings regarding the credibility of testimony describing "the intensity, persistence, and functionally limiting effects of . . . symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments); *see also Wilson v. Astrue*, 602 F.3d 1136, 1144–45 (10th Cir. 2010). Although the Plaintiff raises a separate credibility challenge based on the ALJ's alleged use of boilerplate language, the Court addresses Plaintiff's RFC challenge together with that claim as both alleged errors arise from the ALJ's credibility determination.

---

[5] The record reflects the attack occurred in 2011, not 2012 as stated in Plaintiff's brief. *See, e.g.*, AR 171, 197, 220. At that time, Plaintiff was still employed and working.

**C.  Credibility Analysis**

Without any discussion of the ALJ's decision, Plaintiff faults the ALJ for allegedly using "template" language in making the credibility determination.  *See* Plaintiff's Brief at p. 8. Plaintiff claims the ALJ found his testimony not fully credible, but erred by not explaining which of Plaintiff's statements he found to be true and untrue.  Plaintiff further argues that the ALJ's generalized explanation for finding Plaintiff's testimony not fully credible is improper.  *Id*. According to Plaintiff, the ALJ only focused his attention on the fact Plaintiff had been "beaten" (i.e., attacked in a robbery) and had no regular treatment, notwithstanding his 70% VA disability rating. *Id*.  Plaintiff contends "[i]f anything, the fact that [Plaintiff] was beaten and feared being attacked when going into public supports his claim of disability."  *See id*. at p. 9.  Plaintiff further claims, without citation to the record, that the ALJ failed to closely and affirmatively link his credibility findings to substantial record evidence. *Id*.

The ALJ provided a detailed summary of Plaintiff's testimony at the hearing as follows: (1) mental health treatment at the VA, including prescribed medication, is not helpful; (2) it is hard to get appointments at the VA; (3) his medications were changed at his last appointment due to side effects; (4) the new medications were not helping; (5) he has difficulty sleeping; (6) his daily activities are limited; (7) he is anxious around strangers; (8) he fears someone might kill him; (9) he fears someone may be in the house even though he knows the doors are locked; (10) he does not drive due to anxiety; and (11) he stopped working due to a worsening of his depression and a need to care for his health.  AR 21.

The ALJ then made the following credibility determination: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements

13

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 21. The ALJ then discussed the following record evidence to support this finding:

- VA records "mostly reflect acute physical issues that have arisen."

- Prior to the onset date, Plaintiff was allegedly beaten and reported a loss of consciousness, but "all diagnostic testing was negative for any brain injury."

- Although Plaintiff has a 70% disability rating for PTSD, he is not in counseling though at times has had medication management.

- A gap of over one and one-half years exists as to his mental health treatment (from June 2011 until March 2013).

- At his October 2012 consultative examination, Plaintiff reported he was not seeing a psychiatrist regularly and was not in counseling.

- Plaintiff stopped working in July 2012, but did not seek mental health counseling until seven months later.

- Plaintiff's December 2013 psychiatric evaluation by Dr. Gutierrez resulted in a change in medications and Plaintiff's "[t]hought processes were logical and goal directed[,] [i]mmediate memory was three out of three items recalled, and two out of three items after one minute; concentration was fair and insight was fair."

AR 21. For each of these findings, the ALJ gave specific citation to the record evidence relied upon. *See id.*

The ALJ also addressed the Third Party Function Report completed by Plaintiff's spouse but gave that report "only some weight." AR 22. The ALJ stated the report is "largely consistent with the claimant's allegations" but discounted the report because Plaintiff's spouse

"is not medically trained to make exacting observations" and "by virtue of the relationship as the spouse of the claimant, she cannot be considered a disinterested third party . . . ." *Id.* However, the ALJ found, [m]ost importantly, [that] significant weight cannot be given to the report because it is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." *Id.*

The ALJ then reviewed the medical opinion evidence, giving "great weight" to the state agency medical consultants, Drs. Taber and Lindsay, discussed supra. With respect to their findings, the ALJ noted that the "reviewing psychologists noted there were inconsistencies in [the] record as evidenced by the reports that the claimant was caring independently for young son and was attending college courses, where he maintained a B average." AR 22; *see also* AR 269. Finally, the ALJ made the following finding:

> The record reflects very little treatment for psychological symptoms; Dr. Gutierrez in December 2013 prescribed some trial medications, but no other recommendations were made. There is no evidence of individualized or group counseling. It is also notable that psychological consultative examination by Dr. Davidson in October 2012 did not find sufficient evidence for a diagnosis of PTSD, per the symptoms endorsed by the claimant at the clinical interview. In light of the paucity of treatment records for ay psychologically-based symptoms, but recognizing the VA's 70% service connected PTSD finding, the reviewing state agency medical consultant evaluation seems appropriate and supported by the record.

AR 23 (citations omitted).

The Court will not disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (*citing Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (*citing Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)).

The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

Plaintiff's "template" or "boilerplate language" argument wholly fails in this case. Boilerplate language is insufficient to support a credibility determination only "in the absence of a more thorough analysis." *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). As set forth, the ALJ did not merely recite boilerplate language, but discussed significant record evidence.

With respect to that evidence, Plaintiff's challenge is limited. Plaintiff erroneously contends the ALJ concluded Plaintiff's testimony was not credible "because he only focused his attention on the fact Mr. Sanborn was: i) beaten; and, ii) even though he has a 70% disability he's had no regular treatment over time." *See* Plaintiff's Brief at p. 8. Plaintiff argues that the amount of treatment received by a claimant plays no role in the credibility determination. But Plaintiff erroneously relies on case law addressing the regulations governing whether an impairment is severe at step two of the sequential evaluation process. *See id.* at p. 9 (*citing Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010).[6] Indeed, that same opinion later

---

[6] As the Court explained in *Grotendorst*:

"[T]he regulations set out exactly how an ALJ is to *determine severity*, and consideration of the amount of treatment received by a claimant does not play a role in that determination. This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations. Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative

addresses factors to be considered when assessing credibility for purposes of the RFC determination including "the extensiveness of the attempts (medical or nonmedical) to obtain relief" and "the frequency of medical contacts." *Id.* at 884 (*citing Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir.1991)); *see also Kepler*, 68 F.3d at 391 (a claimant's failure to seek medical treatment may be considered when evaluating the credibility of the claimant's testimony as to the severity of an impairment). Thus, the ALJ's consideration of the amount of treatment Plaintiff received was proper in making the credibility determination.

The only remaining error alleged by Plaintiff is the ALJ's purported "focus" on the fact that Plaintiff was "beaten." Plaintiff argues: "[i]f anything, the fact that he was beaten and feared being attacked when going into public supports his claim of disability." *See* Plaintiff's Brief at p. 9. Plaintiff contends the ALJ did not closely and affirmatively link his findings to substantial evidence in the record.

Plaintiff's argument invites the Court to engage in what is expressly forbidden on review of an ALJ's credibility analysis – i.e., reweighing the evidence or substituting the Court's own judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Plaintiff points to no hearing testimony about the impact of the attack on his mental state. And the Court's independent review of the hearing testimony reveals no such evidence. Nor was the attack mentioned by Plaintiff during the evaluation by Dr. Davidson in October 2012. AR 268-70. Moreover, as set forth above, the ALJ expressly addressed the objective medical evidence regarding Plaintiff's attack and noted that there were no signs of brain injury. Given this finding, in addition to the ALJ's findings set forth above, Plaintiff's claim that the ALJ did

---

examinations. Thus, the ALJ failed to follow the regulations in reaching her determination that Ms. Grotendorst's mental limitations were not severe *at step two of the sequential evaluation*.

*Id* (emphasis added).

not link his credibility findings to substantial evidence in the record, is belied by the record. *See Wilson,* 602 F.3d at 1145-46. In this respect, the Court notes that an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence." *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Instead, "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility" the ALJ's findings are sufficient. *Id.*

For substantially these same reasons, Plaintiff's claim that the ALJ did not adequately address his symptomology is without merit. As set forth, the ALJ provided a thorough discussion of Plaintiff's symptomology and the evidence he relied upon to determine Plaintiff's credibility.

In sum, even if, as Plaintiff contends, the evidence might support a different result than that reached by the ALJ, Plaintiff has failed to demonstrate the ALJ's decision is not supported by substantial evidence or that the ALJ committed legal error in rendering that decision. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'") (*citing Zoltanksi v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). This Court cannot and will not reweigh the evidence. Therefore, Plaintiff's challenge to the ALJ's credibility determination is without merit and should be denied.

### D. VA Disability Rating

As his final claim of error, Plaintiff faults the ALJ for not properly addressing the 70% disability rating the VA attributed to Plaintiff's PTSD. Plaintiff states that the ALJ mentioned the rating four times in his decision, *citing* AR 16-18, 21, but that the ALJ failed to express any opinion as to what weight the rating should receive. *See* Plaintiff's Brief at p. 9.

It is well-established that a disability rating by another agency, while not binding on the Commissioner, "is evidence that the ALJ must consider and explain why he did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). Clearly here, the ALJ considered the evidence, as Plaintiff concedes the ALJ referenced the disability rating at least four times in his decision. The issue, therefore, is whether the ALJ sufficiently explained why he did not find the VA disability rating persuasive.

The Commissioner contends that the ALJ gave the disability rating "some weight" in assessing Plaintiff's RFC. *See* Response at p. 12. But the Commissioner argues that the fact the ALJ drew a different conclusion as to the severity of Plaintiff's PTSD is not reversible error. The Commissioner points out that the ALJ "based his findings on different evidence and applied a different legal standard" than that applicable to the VA disability rating. *Id.*

The record shows that the ALJ thoroughly addressed the VA disability rating and provided reasons for finding the rating not persuasive. The ALJ acknowledged that Plaintiff "is on 70% service connected disability for PTSD" but that "[t]he records for the service connected disability medical determination are not in evidence." AR 16.[7] In addressing Plaintiff's credibility, the ALJ found: "Although the claimant has 70% service connected disability for PTSD [citation omitted], he is in no counseling, but did at times have medication management. There was a gap of over one and one-half years in mental health treatment from June 2011 until

---

[7] As to these records, Plaintiff has not raised any claim that the record was not sufficiently developed. In this respect, the Court notes that although the administrative law judge has a duty to develop the record, where a plaintiff is represented by counsel, as Plaintiff was in this case, the administrative law judge is ordinarily "'entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored.'" *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (*quoting Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)). The ALJ specifically asked Plaintiff's attorney, at the beginning of the hearing, whether the documentary record was complete and Plaintiff's attorney said that it was. AR 347.

March 2013." AR 21. And, in addressing Plaintiff's RFC, the ALJ found: "In light of the paucity of treatment records for any psychologically-based symptoms, but recognizing the VA's 70% service connected PTSD finding [citation omitted], the reviewing state agency medical consultant evaluation seems appropriate and supported by the record." AR 23.

Under these circumstances, the ALJ sufficiently addressed the VA disability rating and the weight given to that rating in making the disability determination. Plaintiff fails to identify any specific error and the broad allegation that the ALJ failed to comply with the dictates of *Grogan* is belied by the record. *Compare Breneiser v. Astrue*, 231 F. App'x 840, 845 (10th Cir. 2007) (rejecting claimant's argument that the ALJ should have given the VA's rating more weight, where claimant did not identify "any specific factual finding or evidence in the [VA's] disability determination that should have changed the [ALJ's] decision") (citation omitted). Any claim of error, therefore, premised on the ALJ's failure to address the VA's disability determination should be denied.

## RECOMMENDATION

For the reasons set forth it is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by the 16th day of November, 2015. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 26th day of October, 2015.

BERNARD M. JONES
United States Magistrate Judge